ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7027
    Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 22-CR-397 JSC |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | Hearing Date: May 17, 2023<br>Hearing Time: 10:30 a.m.<br>Courtroom: 14 (18th Floor)<br>Judge: Hon. Laurel Beeler |
| JESUS SALAMANCA-BENITEZ, | |
| Defendant. | |

## I.    INTRODUCTION

On October 12, 2022, the grand jury returned an Indictment charging defendant Jesus Salamanca-Benitez ("Salamanca") with the following five counts: (1) conspiracy to distribute 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A); (2) conspiracy to distribute fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); (3) attempted distribution of 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A); (4) distribution of 50 grams and more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A); and (5) distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

The charges in the case stem from the defendant's involvement in the distribution of substantial

quantities of methamphetamine and pills laced with fentanyl in the Northern District of California. At the time of the instant offenses, Salamanca was on supervised release following a conviction for narcotics-related offenses in the District of Washington. Salamanca resides in Mexico. He does not have any ties to the Northern District of California—a fact confirmed by the Pretrial Services Report.

The defendant was arrested on a warrant pertaining to the Indictment on or around April 5, 2023 in Southern California when he crossed the border from Mexico. At the time, there was also a warrant out for Salamanca's arrest, issued in the District of Arizona, because Probation had filed a Form 12 violation charging Salamanca with violating his supervised release condition by committing another federal, state, or local crime.

The government requests detention in this case to assure the defendant's appearance in court and the safety of the community. Pretrial similarly recommends detention based on a risk of non-appearance. *See* Pretrial Services Report, at 6.

## II.     FACTUAL BACKGROUND

### A.     Salamanca Conspired To Distribute And Distributed Large Quantities Of Methamphetamine And Fentanyl From March, 2021 Through September, 2021

The charges in this case stem from the Drug Enforcement Administration's ("DEA") investigation into a drug trafficking organization ("DTO") based out of Tijuana, Mexico. This DTO sold and distributed wholesale quantities of methamphetamine and counterfeit M-30 Oxycodone pills within the Northern District of California and elsewhere. The DTO was at least at one time affiliated with the *Nueva Plaza Cartel*. The DEA learned that an individual, who was known as "Javo," was head of the DTO until approximately early November 2020, when he was murdered in Guadalajara, Mexico. In early 2021, agents learned that one of Javo's subordinates, Salamanca, had assumed a leadership position within the DTO.

From at least March 2021 through September 2021, Salamanca negotiated and arranged the distribution of substantial quantities of methamphetamine and counterfeit M-30 Oxycodone pills containing fentanyl in the Northern District of California. These negotiations led to three separate drug seizures from various drug couriers sent by Salamanca on or about April 16, 2021, August 14, 2021, and September 29, 2021, totaling approximately 30 pounds of methamphetamine and approximately one

thousand counterfeit Oxycodone pills containing fentanyl.

Between March and April 2021, Salamanca arranged with another individual ("Individual 1") to supply ten pounds of methamphetamine to that individual, using the assistance of a courier, on or around April 15, 2021. Law enforcement agents were able to locate and track the vehicle of the courier carrying the drugs and executed a traffic stop in the early hours of April 16 near Gilroy, California. During a search of the vehicle, agents found approximately ten pounds (4535 grams) of methamphetamine wrapped in black-colored shrink wrap and sealed in vacuum-sealed packaging. The drugs were submitted for lab testing, which confirmed a net wight of approximately 4418 grams of methamphetamine and a pure methamphetamine weight of approximately 4285 grams. A picture of the seized methamphetamine is provided below:



In August 2021, Salamanca arranged another narcotics transaction in which he agreed to distribute approximately twenty pounds of methamphetamine in the Northern District of California. Salamanca planned to send a courier northbound from Southern California carrying the drugs. An undercover agent arranged to meet Salamanca's courier to collect the drugs on August 14, 2021 in San Jose, California. The courier provided the undercover agent with approximately ten vacuum sealed

UNITED STATES' DETENTION MEMORANDUM      3
22-CR-397 JSC

1  packages containing methamphetamine (gross weight of 9975 grams).  Lab results confirmed that the
2  net weight of the methamphetamine was 8825 grams, and the pure methamphetamine weight was also
3  8825 grams.  Salamanca's courier accepted payment of $9500 on behalf of Salamanca in exchange for
4  the drugs.  A picture of the drugs seized on August 14 is provided below:



In September 2021, Salamanca agreed with Individual 1 to distribute approximately 1,000 counterfeit M-30 Oxycodone pills, delivered via a courier, in the Northern District of California.  On September 29, 2021, the courier and Individual 1 met in Redwood City, where the courier provided Individual 1 with two clear plastic bags that contained approximately 1,000 blue-colored pills stamped with "M-30".  The courier accepted payment of $4,500 on behalf of Salamanca for the pills.  Lab tests confirmed that the net weight of the pills was approximately 106 grams.  The lab tested a pill as a sample and confirmed the presence of fentanyl.  A picture of the pills seized on September 29, 2021 is provided below:



### B. Salamanca Has A Prior Conviction For Conspiracy To Distribute Methamphetamine

The charged offenses do not mark Salamanca's first foray into illegal drug distribution. Salamanca has a prior conviction for very similar misconduct from the District of Washington. In 2016, Salamanca pled guilty to one count of conspiring to distribute 5 grams of more (or 50 grams or more of a mixture and substance) of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). As described in the PSR, this Washington conviction stemmed from an investigation into a drug trafficking organization with ties to a Mexican drug cartel that was distributing multi-kilogram quantities of heroin and methamphetamine in western Washington. On January 20, 2014, a confidential informant picked up two DTO members, one of whom was Salamanca, from Portland, Oregon. Salamanca told the informant that he wanted to leave Georgia because one of his runners had been arrested. The informant drove Salamanca to a meeting place in Washington, where they met other individuals. Salamanca and other coconspirators then removed the reserve fuel tank from under the rear of the vehicle, which they told the informant contained liquid methamphetamine mixed with diesel fuel. On March 20, 2014, a co-conspirator directed Salamanca to have a confidential informant pick up six pounds of methamphetamine from another co-conspirator. This methamphetamine was then transported to a stash house. In addition, around April 2014, Salamanca talked to the informant about traveling to

California in order transport a load of liquid methamphetamine from the border of Mexico to the Tacoma, Washington area. Subsequently, Salamanca helped source the vehicle that would be used to transport the drugs. On May 8, 2014, the informant and Salamanca began driving the load vehicle south on I-5 for the pick-up. Finally, on May 12, 2014, Salamanca and other co-conspirators fronted approximately three ounces of methamphetamine to an individual and directed that individual to sell it for $600 in order to help fund the trip to California, where the bulk load of methamphetamine would be picked up.

Salamanca was sentenced to 50 months imprisonment and 48 months of supervised release for his 2016 conviction. His supervision commenced on December 31,2018 and was set to expire on December 30, 2022. His supervision was transferred to the District of Arizona at some point during this period. The government understands that Salamanca also moved to Mexico at some point during his supervision period. Thus, the defendant was residing in Mexico while he committed the instant offenses, and while still on supervised release for his prior narcotics conviction.

### III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *See United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *See id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible. *See id.* Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *See id.*

Where (as here) there is probable cause that a defendant has violated the Controlled Substances

Act and faces a maximum of 10 years in prison or more, courts apply a rebuttable presumption against the defendant that no condition or combination of conditions reasonably will assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production then shifts to the defendant. *See United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Although the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). In other words, the presumption is not so weak that if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id.* (further stating that such an approach would "render the presumption virtually meaningless" because a defendant can "always provide the magistrate with *some* reason" (emphasis added)). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See United States v. King*, 849 F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the court concludes that the defendant has rebutted the statutory presumption of detention, the court must consider four factors in determining whether the pretrial detention standard is met. Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

### IV.     ARGUMENT

#### A.     Salamanca Is Subject to a Rebuttable Presumption in Favor of Detention

The Indictment in this case charges the defendant with multiple controlled substance violations, three of which carry a statutory maximum penalty of lifetime imprisonment and two of which carry a

statutory maximum penalty of 30 years imprisonment.  As such, the defendant is subject to a rebuttable presumption in favor of detention.  *See* 18 U.S.C. § 3142(e)(3)(A).  To overcome this presumption, the defendant must show that he is not a flight risk *and* that his release will not endanger the community.  He cannot do so.

**B.    Salamanca Cannot Rebut the Presumption That He Is a Danger to the Community**

The defendant is charged with conspiring to distribute and distributing large amounts of methamphetamine and counterfeit Oxycodone pills containing fentanyl in the Northern District of California.  Salamanca's role in the DTO is significant.  He was not a low-level dealer or courier.  He was the key supplier of the drugs in Mexico.  Not only was he able to source the drugs, but he also handled the distribution of the drugs from Mexico into the United States.  In total, based on the three transactions charged in the Indictment, Salamanca was responsible for the distribution or attempted distribution of approximately 13,110 grams (almost thirty pounds) of pure methamphetamine and 1,000 counterfeit pills laced with fentanyl.  The Court is well-aware of the dangers methamphetamine and counterfeit pills containing fentanyl can have on the community.  Not only can these drugs result in death or serious health damage for the users, but their large-scale distribution can also have devastating consequences for the community at large.

The charged conduct is far from an aberration for the defendant. He has been engaged in large scale drug distribution networks since at least 2014.  Indeed, Salamanca was convicted for very similar conduct (conspiracy to distribute methamphetamine) in 2016.  Despite receiving a 50-month prison sentence for this conviction, Salamanca has not been deterred from engaging in serious drug distribution activities.  Salamanca has also shown that he will not abide by conditions of release.  He engaged in the current offenses while on supervised release.  The defendant's "continuing involvement with the distribution of drugs" militates in favor of detention.  *United States v. Wolf*, 2015 WL 4573039, at *3 (N.D. Cal. July 29, 2015); *United States v. Fulgham*, 2012 WL 2792439, at *4 (N.D. Cal. July 9, 2012) ("The Senate Report states: The Committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community. Defendant's tendency to repeatedly commit similar crimes shows that he poses an unmitigable danger to the community." (quotation marks and citation omitted)).

The defendant's repeated involvement in dangerous drug trafficking activities establishes that the only way to safeguard the community from the defendant is to detain him pending trial.

### C. The Defendant Presents a Significant Flight Risk

The defendant resides in Mexico and is believed to possess dual Mexican and U.S. citizenship. The defendant engaged in the charged offenses while residing in Mexico. He has no ties to the Bay Area. He does have significant ties, however, in Mexico. Salamanca's family lives in Mexico, his residence is in Mexico, and his purported job at his family's avocado business is in Mexico. Furthermore, the defendant is facing charges of serious magnitude—three of the charges carry minimum fifteen years of imprisonment and all five charges carry a maximum imprisonment sentence of either thirty years or life. Given the defendant's non-existent ties to the community and the pending charges, he has little incentive to remain in the Bay Area to see this case to its conclusion. There is no reason to think the defendant will appear for these federal proceedings if the Court releases him. Pretrial agrees, writing, "the defendant does pose a risk [of] non-appearance that cannot be reasonably mitigated by a combination of release conditions."

In consideration of all the circumstances—including the nature and circumstances of this offense, the weight of the evidence against the defendant, the significant sentences he faces if convicted, and his scant connections to the Bay Area—there is a substantial risk that the defendant will refuse to abide by any court-ordered conditions of release and will flee.

### V. CONCLUSION

There are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED: May 16, 2023                                        Respectfully submitted,

                                                            ISMAIL J. RAMSEY
                                                            United States Attorney


                                                             /s/ Kristina Green
                                                            KRISTINA GREEN
                                                            Assistant United States Attorney