CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

KRISTINA GREEN (NYBN 5226204)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6912
    FAX: (415) 436-7027
    Kristina.Green@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JESUS SALAMANCA-BENITEZ,<br><br>    Defendant. | CASE NO. 22-CR-397 JSC<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date:  September 3, 2025<br>Hearing Time:  10:00 a.m.<br>Courtroom:  8 (19th Floor)<br>Judge  Hon. Jacqueline Scott Corley |

## I.    INTRODUCTION

On May 21, 2025, defendant Jesus Salamanca-Benitez, pleaded guilty to Counts One, Two, and Four of the Superseding Information, charging him with (1) conspiracy to distribute 50 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B); (2) conspiracy to distribute fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C); and (4) distribution of 5 grams and more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). Based on the unique facts of this case and the history and characteristics of the defendant, the government respectfully recommends that the court impose a sentence of 160 months of imprisonment, followed by four years of supervised release, and a $300 special assessment. The charges in the case stem from the defendant's involvement in the distribution of substantial quantities of

methamphetamine and pills laced with fentanyl in the Northern District of California. At the time of the offenses, Salamanca was on supervised release following a conviction for narcotics-related offenses in the District of Washington.

## II.  FACTUAL BACKGROUND

### A.  Offense Conduct

The charges in this case stem from the Drug Enforcement Administration's ("DEA") investigation into a drug trafficking organization ("DTO") based out of Tijuana, Mexico. This DTO sold and distributed wholesale quantities of methamphetamine and counterfeit M-30 Oxycodone pills within the Northern District of California and elsewhere. The DTO was at least at one time affiliated with the *Nueva Plaza Cartel*. The DEA learned that an individual, who was known as "Javo," was head of the DTO until approximately early November 2020, when he was murdered in Guadalajara, Mexico. In early 2021, agents learned of Salamanca's involvement in the DTO (one of Javo's subordinates). PSR ¶ 7.

From at least March 2021 through September 2021, Salamanca negotiated and arranged the distribution of substantial quantities of methamphetamine and counterfeit M-30 Oxycodone pills containing fentanyl in the Northern District of California. These negotiations led to three separate drug seizures from various drug couriers sent by Salamanca on or about April 16, 2021, August 14, 2021, and September 29, 2021, totaling approximately 30 pounds of methamphetamine and approximately one thousand counterfeit Oxycodone pills containing fentanyl.

Between March and April 2021, Salamanca arranged with another individual ("Individual 1") to supply ten pounds of methamphetamine to that individual, using the assistance of a courier, on or around April 15, 2021. Law enforcement agents were able to locate and track the vehicle of the courier carrying the drugs and executed a traffic stop in the early hours of April 16 near Gilroy, California. A search of the vehicle revealed approximately ten pounds of methamphetamine (pure weight of approximately 4285 grams) wrapped in black-colored shrink wrap and sealed in vacuum-sealed packaging. PSR ¶¶ 8, 10. A picture of the seized methamphetamine is provided below:



In August 2021, Salamanca arranged another narcotics transaction in which he agreed to distribute approximately twenty pounds of methamphetamine in the Northern District of California. Salamanca planned to send a courier northbound from Southern California carrying the drugs. PSR ¶ 11. An undercover agent arranged to meet Salamanca's courier to collect the drugs on August 14, 2021 in San Jose, California. *Id.* The courier provided the undercover agent with approximately ten vacuum sealed packages containing methamphetamine (pure weight of approximately 8,825 grams). Salamanca arranged for a courier to pick up the money owed to him for the methamphetamine ($9,500) in San Jose on September 9, 2021. *Id.* A picture of the drugs seized on August 14 is provided below:



In September 2021, Salamanca agreed with Individual 1 to distribute approximately 1,000 counterfeit M-30 Oxycodone pills, delivered via a courier, in the Northern District of California. PSR ¶ 12. On September 29, 2021, the courier and Individual 1 met in Redwood City, where the courier provided Individual 1 with two clear plastic bags that contained approximately 1,000 blue-colored pills stamped with "M-30". *Id.* The courier accepted payment of $4,500 on behalf of Salamanca for the pills. Lab tests confirmed that the net weight of the pills was approximately 106 grams. The lab tested a pill as a sample and confirmed the presence of fentanyl. *Id.* A picture of the pills seized on September 29, 2021 is provided below:



UNITED STATES' SENTENCING MEMORANDUM    4
22-CR-397 JSC

In total, Salamanca is responsible for distributing a total of 13,110.9 grams of actual methamphetamine and 106 grams of fentanyl.  PSR ¶ 13.

### B.     Applicable Guidelines Calculation

The government calculates the Guidelines in accordance with the plea agreement.  Salamanca has a base offense level of 38.  PSR ¶ 19.  There is a two-level enhancement for importing methamphetamine.  PSR ¶ 20.  There is a three-level reduction for acceptance of responsibility, leaving a total offense level of 37.  PSR ¶¶ 26-27.  The government agrees with Probation's determination that the defendant is in Criminal History Category II.  PSR ¶ 34.  The resulting Guidelines range, as calculated by the government, is 235–293 months.  PSR ¶ 59.

Based on the nature and circumstances of the offense and the history and characteristics of the defendant, the government recommends a sentence of 160 months' imprisonment (a downward variance from the guidelines), and 4 years supervised release.  This sentence is consistent with Probation, who also recommends a sentence of 160 months' imprisonment and 4 years supervised release.  *See* PSR, Sentencing Recommendation.

## III.     DISCUSSION

### A.     Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991–93.

### B.     A Sentence of 160 months is Sufficient and Not Greater than Necessary to Comply with 18 U.S.C. § 3553(a).

A sentence of 160 months imprisonment represents a downward variance from the Guidelines range as calculated by the government in this case.  The government, however, believes this sentence would sufficiently address the gravity of defendant's conduct, his history and characteristics, promote respect for the law, accomplish deterrence objectives, and protect the public, while also balancing

consideration of mitigating factors, including the defendant's abuse as a child, substance abuse issues and the need to avoid unwarranted sentence disparity. *See* §§ 3553(a)(1), (2)(A)-(C), (6).

### 1. Nature and Circumstances of the Offense.

Salamanca was not a low-level dealer or courier. He supplied and distributed large amounts of methamphetamine and counterfeit Oxycodone pills containing fentanyl from Mexico, all while being on supervised release for a prior drug distribution crime. Salamanca was able to source the drugs from Mexico and arrange the distribution of the drugs from Mexico into the United States. Based on the three transactions underlying the counts of conviction, Salamanca was responsible for the distribution of approximately 13,110 grams (almost thirty pounds) of pure methamphetamine and 1,000 counterfeit pills laced with fentanyl. Not only can these drugs result in death or serious health damage for the users, but their large-scale distribution can also have devastating consequences for the community at large.

A sentence of 160 months is sufficient to reflect the seriousness of the offense, while also not causing unwarranted sentence disparities. The JSIN information indicates that the average sentence for defendants in the same offense level and criminal history category is 159 months. PSR ¶ 76.

### 2. History and Characteristics of the Defendant

The charged conduct is far from an aberration for the defendant. He has been involved with large scale drug distribution networks since at least 2014. Indeed, Salamanca was convicted for very similar conduct (conspiracy to distribute methamphetamine) in 2016 in the District of Washington. PSR ¶ 31. This Washington conviction stemmed from an investigation into a drug trafficking organization with ties to a Mexican drug cartel that was distributing multi-kilogram quantities of heroin and methamphetamine in western Washington and from California to Washington. *Id.* Specifically, during one transaction, on March 20, 2014, Salamanca and others agreed to deliver six pounds of methamphetamine from the Olympia area of Washington to Vancouver, Washington. *Id.*

Salamanca was sentenced to 50 months imprisonment and 48 months of supervised release for his 2016 conviction. His supervision commenced on December 31,2018 and was set to expire on December 30, 2022. His supervision was transferred to the District of Arizona. On July 16, 2019, Probation allowed Salamanca to move to Mexico to reside with his family. *Id.* Salamanca was residing in Mexico while he committed the instant offenses, and while still on supervised release for his prior

narcotics conviction.

Despite receiving a 50-month prison sentence for his prior conviction, Salamanca has not been deterred from engaging in serious drug distribution activities. Salamanca has also shown flagrant disregard for abiding by supervised release conditions. Probation trusted Salamanca, showing him huge leniency by allowing him to move to Mexico, and he abused that trust. While on supervised release, he engaged in even more serious crimes than those related to his prior conviction, including distribution of fentanyl as well as just methamphetamine. The defendant's continuing involvement with the distribution of drugs militates in favor of a substantial sentence in order to reflect just punishment, afford adequate deterrence, and protect the public from future crimes of the defendant.

Nevertheless, the government does recognize that there are certain mitigating factors, which warrant the downward variance recommended by the government. Salamanca indicated a desire to accept responsibility not long after he had been charged. He also experienced a difficult childhood, including being abused by his father. PSR ¶ 43.

### IV.    CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of 160 months of imprisonment, four years of supervised release, and $300 special assessment.

DATED: August 31, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

 /s/ Kristina Green
KRISTINA GREEN
Assistant United States Attorney